**IN THE UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT**

| | |
|---|---|
| LEMBERG LAW LLC, | : <br> : <br> : Civil Action No.: <br> : <br> : <br> : <br> : **DEMAND FOR JURY TRIAL** <br> : <br> : <br> : <br> : |
| Plaintiff, | |
| v. | |
| EGENERATION MARKETING, INC., CHRISTOPHER G. INANNELLA, DANIEL F. MUMMOLO and DOES 1-10 inclusive, | |
| Defendants. | |

**COMPLAINT**

For this Complaint, Plaintiff, Lemberg Law LLC (referred to herein as "Lemberg" and/or "Plaintiff"), by undersigned counsel, states as follows:

**INTRODUCTION**

1. Plaintiff brings this civil action for damages resulting from the illegal actions of the Defendants for false advertising under Section 43(a) of the Lanham Act, 15 U.S.C § 1125(a), unfair and deceptive acts and practices under the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. §§ 42-110b, and/or Connecticut common law.

2. By and through their operation of the website www.stopcollections.org, Defendants Egeneration Marketing, Inc. ("Egeneration"), its President, Christopher G. Iannella ("Ianella"), and CEO, Daniel F. Mummolo ("Mummolo"), are actively engaged in a false, misleading and deceptive advertising campaign which directly impacts consumers in the Connecticut market, and elsewhere, adversely affects Plaintiff and is in direct violation of C.G.S.A. §§ 51-86 and 51-87.

**PARTIES**

3. Plaintiff, Lemberg Law LLC, is a limited liability company with its principal place of business at 43 Danbury Road, Wilton, Connecticut 06897.

4. Defendant, Egeneration Marketing, Inc., is a for profit corporation with its principal place of business at 326 A Street, Unit 1A, Boston, Massachusetts 02210.

5. Defendant, Christopher G. Iannella, is owner, shareholder, President and director of Egeneration Marketing, Inc., with its principal place of business at 326 A Street, Unit 1A, Boston, Massachusetts 02210.

6. Defendant, Daniel F. Mummolo, is owner, shareholder, CEO and director of Egeneration Marketing, Inc., with its principal place of business at 326 A Street, Unit 1A, Boston, Massachusetts 02210.

7. Does 1-10 (the "Lawyers") are individual lawyers subscribing to the www.stopcollections.org website and whose identities are currently unknown to the Plaintiffs. One or more of the Lawyers may be joined as parties once their identities are disclosed through discovery.

## JURISDICTION AND VENUE

8. This Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331, in that the claims arise under the Lanham Act, 15 U.S.C. § 1051, et seq. This Court has pendent jurisdiction over the state law claims that arise under the laws of Connecticut, pursuant to the principles of supplemental jurisdiction set forth in 28 U.S.C. § 1367.

9. This Court has personal jurisdiction over Defendants as they conduct business in this District and have disseminated false advertising in Connecticut.

10. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) in that the Defendants transact business in this District and a substantial portion of the acts giving rise to this action occurred in this District. Further, Defendants have solicited business in this District, falsely advertised in this District and engaged in unfair competition in this District. Defendants have also committed the offending acts through use of the Internet and using deceptive practices on the Internet, which is used by residents of this District.

## FACTUAL ALLEGATIONS

11. Lemberg is a consumer law firm that represents clients in Fair Debt Collection Practices Act cases.

12. Lemberg maintains websites at www.lemberglaw.com and www.stopcollector.com that advertise legal services nationwide, including the Connecticut market, related to Fair Debt Collection Practices Act ("FDCPA") claims, along with other consumer law claims.

13. Lemberg has been advertising its legal services related to FDCPA for over 12 years.

14. Egeneration is a company in the business of generating leads for lawyers and law firms in connection with FDCPA claims.

15. Egeneration is not a law firm but nonetheless holds itself out, by and through its www.stopcollections.org website (Exhibit 1), as a provider of legal services in connection with FDCPA claims.

16. Through its advertising by way of their website Defendants market to and actively solicit potential FDCPA clients.

17. The business activities of Defendants as alleged herein substantially affect interstate commerce and use communications in interstate commerce.

18. Defendants' website (the "Website") offers "100% free legal consultation" relating to debt collectors and harassment, i.e. FDCPA and is presented in a fashion specifically designed to deceive and mislead consumers into believing that Defendants are lawyers and/or are providing legal services in relation to FDCPA claims.

19. The Website further offers to connect consumers with lawyers:

This site was created to help people like you connect with lawyers who can file successful claims against debt collectors who have violated your legal rights. Not only do you have a right to protect yourself from the unethical practices of debt collection agencies, you have a right to seek out damages when your rights have been violated. Request a free evaluation of your case to be connected with a lawyer who can help ensure your rights are not further violated by predatory collection agencies.

20. However, the Website does not name any lawyer admitted in Connecticut.

21. The one attorney referenced on the Website is Alaina Sullivan, a sole practitioner based in Oxford, Michigan.

22. While Defendants disclaim being an attorney referral service, their Website hides such disclaimer in small print at the very bottom of the site.

23. In reality, the Website was designed with the intent of deceiving consumers into believing they are dealing with a law firm who can help them with their FDCPA claims, when in reality the Defendants are really trolling for clients for unidentified lawyers.

24. At the top of the website, there is a headline "HARASSED BY CREDITORS? YOU COULD BE ENTITITLED TO COMPENSATION.

25. This headline is materially deceptive because it lures a prospective customer into believing he/she is dealing with a law firm when that is not in fact the case.

26. The image on the website of a man and a woman in professional attire further impresses upon the visitor that the website belongs to a law firm licensed to offer legal advice.

27. The menu of the middle of the page offers a '100% Free Legal Consultation" for potential violations of the law, when in fact Defendants are neither licensed nor capable of offering such a consultation.

28. Under the "FAQ" section of the Website, Defendants pose the consumer question of "How much does it cost to speak with an attorney?" and respond, "We offer a 100% free case evaluation."

29. Upon information and belief, Defendant, Christopher G. Iannella, as owner, shareholder, President and director of Egeneration, was and is actively and directly involved in the design, creation, content and maintenance of Egeneration's advertising campaign and the Website.

30. Upon information and belief, Defendant, Daniel F. Mummolo, as owner, shareholder, CEO and director of Egeneration, was and is actively and directly involved in the design, creation, content and maintenance of Egeneration's advertising campaign and the Website.

31. The Defendants' advertising is false, misleading and deceptive in that Defendants are holding themselves out as lawyers and/or a law firm and offering legal services when they are in fact not lawyers, not a law firm and do not provide legal services.

32. While some forms of cooperative legal advertising among lawyers are permissible, Defendants are purposefully and deliberately eschewing compliance with applicable cooperative advertising State rule.

33. Instead, Defendants are engaged in traditional 'lead running' or 'lead selling,' just on the Internet. They attract unsuspecting consumers to their website, then sell the leads to participating lawyers.

34. The illegal nature of Defendants' business is revealed by the emails they send to attorneys nationwide to whom they aim to sell leads, such as this:

> **From:** Alyssa Meyer [mailto:arm@egenerationmarketing.com]
> **Sent:** Thursday, December 15, 2016 10:12 AM
> **To:** Sergei Lemberg
> **Subject:** Sergei - Open to discussing?
>
> Hi Sergei,
> Could Lemberg Law use more creditor harassment cases?
>
> ***We generate*** exclusive FDCPA cases leads online and are looking for a firm like yours to partner with and send these potentials to. Check out the web form on our website that claimants fill out in order to speak with an attorney here: http://www.stopcollections.org/
>
> Not sure if you have used lead generation services in the past but it's a great way to supplement your other marketing efforts, receive a steady flow of new potentials and retain new clients low cost-per-case. Please let me know if you're open to a 10 minute phone call or looking at more information.
>
> Thank you!
> Alyssa Meyer
> eLuminate eGenerationMarketing

(emphasis supplied)

35. Further, Defendants' advertising campaign in the is false, misleading and deceptive in that Defendants, who are not lawyers or a law firm, cannot provide any legal consultation, despite their claim in boldface type to the contrary.

36. The purpose of the Defendants' advertising is to compete with licensed law firms for client acquisition online without complying with any rules or regulations.

37. The Defendants' website is intended to mislead and/or deceive the people of Connecticut and elsewhere that Defendants actively litigate FDCPA matters when in fact they do not.

38. Consumers in the Connecticut market and nationwide would be misled and/or deceived by the Defendants' advertising.

39. Consumers would confuse Defendants' website with a law firm offering legal services.

40. Section 7.2 of the Connecticut Rules of Professional Conduct states, in relevant part, "[a]ny advertisement or communication made pursuant to this Rule shall include the name of at least one lawyer admitted in Connecticut responsible for its content."

41. Pursuant to Conn. Gen. Stat. §§ 51-86 and 51-87, Defendants' actions in soliciting cases for third party attorneys as described herein are illegal in nature.

42. Aside from Connecticut, other states (such as New York, Florida, Minnesota, Michigan, Maryland, Virginia, Texas, Illinois, California, Massachusetts) have also found such solicitation of clients to be illegal. *See* McKinney's Judiciary Law § 482, NY JUD § 482; F. S. A. § 877.02, FL ST § 877.02; M.S.A. § 481.03; M.C.L.A. 750.410; MD Code, Business Occupations & Professions, § 10-604; VA Code Ann. § 54.1-3939, et seq; V.T.C.A., Penal Code § 38.12; 705 ILCS 210/1; West's Ann.Cal.Bus. & Prof.Code § 6152; M.G.L.A. 221 § 43.

43. Defendants have engaged in improper and/or illegal conduct by propagating false and misleading statements in their advertising.

44. Defendants' advertising as described herein has deprived and continues to deprive Plaintiff, and other consumer law firms, the opportunity to obtain prospective clients.

45. Plaintiff and Defendants are in direct competition with each other as it relates to providing legal services for clients pursuing FDCPA claims.

46. Numerous prospective FDCPA clients contact law firms and/or lawyers based on advertising.

47. Plaintiff has obtained clients through web-based advertising for over 12 years in the Connecticut and surrounding area.

48. As a result of Defendants' false and misleading advertising Plaintiff has lost the opportunity to represent numerous FDCPA clients.

49. As a result of Defendants' false and misleading advertising Plaintiff has experienced a decline in the number of new clients that have contacted Plaintiff for legal services.

50. As a result of Defendants' false and misleading advertising Plaintiff will continue to lose the opportunity to represent future FDCPA claimants.

51. As a result of Defendants' false and misleading advertising Plaintiff has and will continue to lose its ability to expand its client base.

52. Plaintiff also receives a significant portion of new clients through both current and former clients.

53. As a result of Defendants' false and misleading advertising Plaintiff has and will continue to suffer economic loss and loss of good will.

54. Defendants have willfully and intentionally misrepresented the nature of their business and their involvement with potential FDCPA claims in an effort to deceive the consumers in the Connecticut market.

55. As a direct and proximate result of Defendants' actions, Plaintiff has suffered significant damages including but not limited to: (1) actual damages to Plaintiff's goodwill and brand; (2) actual damages for past lost profits it would have made from potential clients that were confused by Defendants' advertising and/or false and misleading statements; (3) actual damages for future lost profits it would have made from clients who intended to hire Plaintiff; (4) actual damages for future lost profits it would have made from future referrals of clients; (5) actual damages related to an inability to expand its client base; (6) actual damages related to

advertising expenses to correct Defendants' misleading and deceptive advertising; and (7) actual damages related to expense to repair the diminished value of its own brand.

## COUNT I

### VIOLATIONS OF THE LANHAM ACT – FALSE ADVERTISING
### 15 U.S.C. § 1051, et seq.

56. The Plaintiff hereby incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

57. Defendants' advertising by way of the Website included false and misleading statements of fact regarding its services and was distributed in interstate commerce and in this District. Such advertising contains actual misstatements and/or misleading statements and/or failures to disclose.

58. Defendants' statements actually deceive and/or have a tendency to deceive a substantial segment of Plaintiff's customers and potential customers. The deceptions are material in that they concern the quality and/or characteristics of Defendants' services and are likely to influence the decisions of consumers.

59. Specifically, Defendants' false and misleading advertising statements and omissions lead the viewer to believe that Defendants are lawyers and/or a law firm and will be directly involved in the handling of their FDCPA claim.

60. Defendants' advertising is misleading in that it does not properly advise that the consumers' FDCPA claims will be handled by lawyers and/or law firms other than Defendants.

61. Defendants' false and misleading advertising statements and omissions injure both consumers and Plaintiff.

62. Defendants' false and misleading advertising statements and omissions violate Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

63. Defendants' false and misleading advertising on the website is likely to cause confusion to the consuming public.

64.	Defendants' false and misleading advertising on the website are likely to continue to injure Plaintiff by causing a decline in revenue, loss of good will, and other harm in an amount to be determined at trial, as a result of Defendants false and misleading statements.

65.	Pursuant to 15 U.S.C. § 1117, Plaintiff is further entitled to recover from Defendants the damages sustained by Plaintiff as a result of Defendants' acts in violation of 15 U.S.C. § 1125(a).  Plaintiff is at present unable to ascertain the full extent of monetary damages it has sustained by reason of Defendants' acts.

66.	Pursuant to 15 U.S.C. § 1117, Plaintiff is further entitled to recover from Defendants the gains, profits and advantages that Defendants obtained as a result of Defendants' acts in violation of 15 U.S.C. § 1125(a). Plaintiff is at present unable to ascertain the full extent of the gains, profits and advantages Defendants have obtained by reason of Defendants' acts.

67.	Pursuant to 15 U.S.C. § 1117, Plaintiff is further entitled to recover from Defendants the costs of this action.  Moreover, Plaintiff is informed and believes, and on that basis alleges, that Defendants conduct was undertaken willfully and with the intention of causing confusion, mistake or deception.

## COUNT II

### VIOLATIONS OF THE CONNECTICUT UNFAIR TRADE PRACTICES ACT
### Conn. Gen. Stat. § 42-110a, et seq.

68.	The Plaintiff hereby incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

69.	Defendants' false and misleading advertising statements and omissions, as set forth herein, actually deceive and/or have a tendency to deceive a substantial segment of Plaintiff's customers and potential customers. The deceptions are material in that they concern the quality and/or characteristics of Defendants' services and are likely to influence the decisions of consumers.

70. Defendants' acts and omissions are calculated to procure an unfair competitive advantage through false, misleading and deceptive advertising.

71. Defendants' false and misleading advertising statements and omissions injure both consumers and Plaintiff in the manor previously alleged and incorporated herein.

## **PRAYER FOR RELIEF**

**WHEREFORE**, the Plaintiff prays for the following relief against Defendants:

1. That this Court enter preliminary injunctive relief enjoining the Defendants from any further publication of advertising in the Connecticut market;

2. That the preliminary injunction remain in effect until a trial on the merits can be held, at which time Plaintiff requests this Court enter permanent injunctive relief;

3. That Defendants account for and pay to Plaintiff any and all gross revenues derived by the Defendants from the publication of the advertising in the Connecticut market;

4. This Court award monetary damages sustained by Plaintiff to include any and all economic loss caused by Defendants' violation of the Lanham Act and pursuant to the Connecticut Unfair Trade Practices Act and Connecticut common law;

5. That this Court issue an injunction against Defendants related to their advertising of illegal lead selling services;

6. That this Court enter a judgment awarding Plaintiff all damages to which it is entitled pursuant to 15 U.S.C. § 1117, the Connecticut Unfair Trade Practices Act and Connecticut common law;

7. That in light of the willful and intentional nature of Defendants' conduct, this Court enter judgment awarding Plaintiff its reasonable attorneys' fees, treble damages and the costs of this action pursuant to 15 U.S.C. § 1117(a), Connecticut law and this Court's equitable discretion;

8. That in light of the willful, malicious and intentional nature of Defendants' conduct, this Court award Plaintiff punitive damages in an amount to be determined at trial; and

9. Such other and further relief as may be just and proper.

**TRIAL BY JURY DEMANDED ON ALL COUNTS**

Dated: April 4, 2018

                        LEMBERG LAW LLC

                        By: /s/ Sergei Lemberg, Esq.
                        LEMBERG LAW L.L.C.
                        43 Danbury Road
                        Wilton, CT 06897
                        Telephone: (203) 653-2250
                        Facsimile:   (203) 653-3424
                        Email: slemberg@lemberglaw.com